2008-NMCA-020

176 P.3d 1163

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Richard ANAYA, Defendant–Appellee.**

**No. 27,441.**

Court of Appeals of New Mexico.

Dec. 6, 2007.

Certiorari Denied, No. 30,818, Jan. 22, 2008.

432

Gary K. King, Attorney General Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellant.

Lilley Law Offices, Marc A. Lilley, Las Cruces, NM, for Appellee.

## OPINION

CASTILLO, Judge.

{1} The State appeals the district court's order granting Defendant's motion to suppress evidence discovered after a traffic stop. The parties agree that the stop was initiated based on the officer's mistaken understanding of the law. The State argues that if the officer's mistake is a reasonable one, the stop is valid. Defendant argues that the evidence known to the officer at the time of the stop did not provide reasonable grounds to support a violation of law. We agree with Defendant, and we affirm.

## I. BACKGROUND

{2} On August 4, 2006, the arresting officer observed Defendant's car weaving within its lane. The officer began to follow Defendant. Defendant failed to signal a right turn at a green light, and the officer stopped Defendant's car. After approaching the car, the officer noticed signs that Defendant was under the influence of alcohol. Defendant was subsequently arrested for driving while intoxicated (DWI).

{3} Defendant moved to suppress the evidence of the DWI and argued that the initial stop was invalid because the officer made a mistake about the relevant traffic law. NMSA 1978, § 66-7-325(A) (1978), governs the use of turn signals and states, in relevant part, the following: "No person shall ... turn any vehicle without giving an appropriate signal ... in the event any other traffic may be affected by such movement." At the hearing on the motion to suppress, the arresting officer testified that at the time of the stop, he understood Section 66-7-325 to require the use of a turn signal in all circumstances. On cross-examination, the officer clarified that he had since learned that the failure to signal is not a per se infraction and is not a violation, unless that failure could have affected traffic. The officer also stated that he did not observe any other cars in the vicinity at the time Defendant made the right turn. The officer did not testify that he, in his patrol car, was affected by the right turn. On direct examination, when he was asked about his reaction to the turn without a signal, the officer responded that he thought he saw a traffic infraction.

{4} The district court found that the officer did not have reasonable suspicion to stop Defendant's vehicle and granted the motion

to suppress the evidence obtained as a result of the stop. The State appeals the district court's order.

## II. DISCUSSION

### A. Standard of Review

{5} A review of the suppression of evidence is a mixed question of law and fact. *State v. Urioste*, 2002–NMSC–023, ¶ 6, 132 N.M. 592, 52 P.3d 964. We consider the facts in the light most favorable to the prevailing party and defer to the district court's findings of fact if those findings are supported by substantial evidence. *State v. Sanchez*, 2005–NMCA–081, ¶ 5, 137 N.M. 759, 114 P.3d 1075. Determinations of reasonable suspicion also require application of law to fact, which we review de novo. *See Urioste*, 2002–NMSC–023, ¶ 6.

### B. Reasonable Suspicion and Mistake of Law

{6} Article II, Section 10, of the New Mexico Constitution and the Fourth Amendment to the United States Constitution control the validity of investigative stops. *State v. Muñoz*, 1998–NMCA–140, ¶ 8, 125 N.M. 765, 965 P.2d 349. Before a police officer makes a traffic stop, he must have a reasonable suspicion of illegal activity. *See State v. Flores*, 1996–NMCA–059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonable suspicion must be based on specific articulable facts and the rational inferences that may be drawn from those facts." *Id.* We evaluate two factors to determine whether a stop was reasonable: (1) whether the stop was justified at its inception and (2) whether continued detention was reasonably related in scope to the original circumstances justifying the stop. *State v. Duran*, 2005–NMSC–034, ¶ 23, 138 N.M. 414, 120 P.3d 836. For our case, we are only required to examine the first factor, whether the stop was justified at its inception.

#### 1. Other Jurisdictions

{7} The State invites this Court to hold that a reasonable, though in fact mistaken, belief that a traffic offense has occurred creates the necessary reasonable suspicion for a valid traffic stop. This type of argument has been considered by numerous courts throughout the nation. The majority position is well articulated in *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003), wherein the court held that conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to justify a traffic stop. *Id.* at 1279. The officer in *Chanthasouxat* mistakenly understood Alabama law to require the rear view mirror to be mounted inside the vehicle, and based on this understanding, he stopped a car with a mirror mounted outside the vehicle. *Id.* at 1272–74. The appellate court acknowledged that the mistake of law was reasonable, given the officer's training and experience, but explained that the reasonableness of the officer's mistake was not the correct inquiry. *Id.* at 1279. Instead, the court posed the correct question: "whether a mistake of law, no matter how reasonable or understandable, can provide the objectively reasonable grounds for reasonable suspicion or probable cause." *Id.* The court recognized the "fundamental unfairness of holding citizens to the traditional rule that ignorance of the law is no excuse, while allowing those entrusted to enforce the law to be ignorant of it." *Id.* at 1280 (internal quotation marks and citation omitted).

{8} Many other jurisdictions rely on the analysis in *Chanthasouxat* for the proposition that a mistake of law can never create the reasonable suspicion needed to make a traffic stop. *See United States v. Coplin*, 463 F.3d 96, 101 (1st Cir.2006) ("Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."); *United States v. McDonald*, 453 F.3d 958, 962 (7th Cir.2006) ("A stop based on a subjective belief that a law has been broken, when no violation actually occurred, is not objectively reasonable."); *United States v. Cole*, 444 F.3d 688, 690 (5th Cir.2006) ("If he did not violate [the statute], the stop is not justified[.]"); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir.2005) ("[F]ailure to understand the law by the very person charged with enforcing it is *not* objectively reasonable."); *United States v. Lopez–Soto*, 205 F.3d 1101, 1106 (9th Cir.2000) ("We have no doubt that [the officer] held his mistaken view of the law in good faith, but there is no good-faith exception to the exclu-

sionary rule for police who do not act in accordance with governing law."); *People v. Ramirez*, 140 Cal.App.4th 849, 44 Cal. Rptr.3d 813, 816 (2006) ("[A] suspicion founded on a mistake of law cannot constitute the reasonable basis required for a lawful traffic stop."); *Couldery v. State*, 890 So.2d 959, 965–66 (Miss.Ct.App.2004) ("Thus, [the officer] had no reasonable basis to believe that [the defendant] was committing a traffic violation. . . . [He] lacked a reasonable basis for his stop, and the stop was not proper."); *State v. Lacasella*, 2002 MT 326, ¶ 30, 313 Mont. 185, 60 P.3d 975 ("[O]bservations made by an officer who does not understand the law are not objectively grounded in the law and, therefore, cannot be the basis for particularized suspicion."); *State v. Tiffin*, 202 Or. App. 199, 121 P.3d 9, 12 (2005) ("Further, the facts, as the officer perceives them, must actually constitute an infraction in order for the officer's belief that an infraction occurred to be objectively reasonable."); *see also* 4 Wayne R. LaFave, *Search and Seizure* § 9.5(b), at 485–86 & nn. 81–82 (4th ed.2004) (discussing cases holding that a mistake of law cannot provide reasonable suspicion for a traffic stop).

{9} The validity of a stop similar to the stop in our case was considered in *United States v. Mariscal*, 285 F.3d 1127 (9th Cir. 2002). In that case, the defendant was a passenger in a car that was stopped by police because the driver turned right without signaling. *Id.* at 1129. Before the stop, the police car was at a standstill on the other side of the street. *Id.* at 1132. Arizona, like New Mexico, makes it illegal for a vehicle to turn without signaling when "any other traffic may be affected by the movement." *Id.* at 1131 (internal quotation marks and citation omitted). The defendant challenged the stop for lack of reasonable suspicion. *Id.* at 1129. Relying on the requirement that a signal is only necessary when other traffic may be affected by the movement, the defendant argued that there could be no violation because there was no evidence traffic had been affected. *See id.* The district court found that the street was "heavily traveled" generally and denied the defendant's motion to suppress. *Id.*

{10} On appeal, the Ninth Circuit reversed the district court. *Id.* at 1133. After review-ing the general law holding that a stop based on a mistake of law violates the Fourth Amendment, the court noted that the case before it was somewhat different because "it is not entirely clear that [the officer] made a mistake about the law of Arizona." *Id.* at 1130–31. Nevertheless, the court held that "as far as the record shows it is clear that if [the officer] did understand the law, the facts known to him could not justify a traffic stop." *Id.* at 1131. The Ninth Circuit reviewed the evidence and rejected the district court's finding regarding heavy traffic because there was no evidence in the record to support it. *Id.* at 1131–32. Similarly, the court concluded that the police car, even if considered traffic, was stopped in a position opposite the turn site and that there was thus not "a scintilla of evidence" that the police car could have been affected by the turn. *Id.* at 1132. The Ninth Circuit reversed and remanded based on its conclusion that the traffic stop was invalid. *Id.* at 1133.

{11} Importantly, these cases limit their holdings to situations in which the conduct on which the officer relied provides support for only the erroneous understanding of the law, or a pure mistake of law case. Courts reach a different result when the fact patterns are expanded to include other legal bases to support the stop. Specifically, when an officer makes a stop based on a mistake of law but the facts articulated by that officer support reasonable suspicion on another basis, the stop is generally upheld. For example, in *United States v. Wallace*, 213 F.3d 1216 (9th Cir.2000), the officer stopped the defendant based on the officer's mistaken belief, or mistake of law, that any tinting of vehicle front windows was illegal. *Id.* at 1217. The law, however, allowed some tint. *Id.* As it turned out, the tinting in the defendant's vehicle was more than twice as dark as the law allowed; therefore, the tinting was illegal. *Id.* The stop was upheld because the officer's testimony provided facts to support a violation of law, even though it was not the law on which the officer had relied to make the stop. *Id.* at 1220–21; *see also* 1 Wayne R. LaFave, *Search and Seizure* § 1.4(d), at 120–21 & n. 30 (4th ed.2004) (discussing cases that upheld stops for violations of law and based the holdings on objective facts to

which an arresting officer testified, rather than on the mistaken legal justification on which the officer relied at the time of arrest).

{12} The Eighth Circuit makes use of the language that the State would have this Court adopt here. "In our circuit, if an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'" *United States v. Washington*, 455 F.3d 824, 827 (8th Cir.2006) (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005)). When confronted with a pure mistake of law scenario, the Eighth Circuit uses different language from that of other jurisdictions but applies the same analysis and reaches the same conclusions. *E.g., Washington*, 455 F.3d at 828 ("[O]fficers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be.").

### 2. New Mexico Cases

{13} With this as a background, we now turn to New Mexico cases. This Court has consistently applied an objective standard to determine whether an officer had reasonable suspicion to make a traffic stop. *See State v. Brennan*, 1998–NMCA–176, ¶ 10, 126 N.M. 389, 970 P.2d 161 (identifying the issue as "whether there were facts available to [the officer] that would warrant a person of reasonable caution to believe the stop was appropriate"); *Muñoz*, 1998–NMCA–140, ¶¶ 8–9 ("The [reasonable suspicion] test is an objective one."). Police officers are required to develop reasonable suspicion based on "objective facts that indicate an individual is, or will be in the immediate future, engaged in criminal activity." *State v. Williams*, 2006–NMCA–062, ¶ 23, 139 N.M. 578, 136 P.3d 579. As we have stated before, "[t]he subjective belief of the officer does not in itself affect the validity of the stop; it is the evidence known to the officer that counts, not the officer's view of the governing law." *Muñoz*, 1998–NMCA–140, ¶ 9. Despite a police officer's mistake of law, an objectively reasonable basis for a traffic stop may justify the stop on grounds other than those indicated by the officer. *Id.* In *Muñoz*, the officer inaccurately believed that a crack in a wind-

shield was a traffic violation, and he noted the wrong statute in the citation. *Id.* ¶¶ 2, 4, 11. At a suppression hearing, the prosecutor used a different statute to justify the initial stop. *Id.* ¶ 6. This Court articulated the following: "If [the officer's] observations provided reasonable grounds to believe that another statute was being violated, or that the vehicle constituted a safety hazard, the stop was valid, regardless of his incorrect understanding of the law." *Id.* ¶ 9. In that case, the state established that a law existed that could have created a reasonable suspicion to make the traffic stop. *Id.* ¶¶ 6, 9, 12.

{14} Similarly, the officer in *Brennan* was incorrect about the geographical reach of the careless driving statute. 1998–NMCA–176, ¶ 4. The district court denied the defendant's motion to suppress the evidence found after the initial traffic stop. *Id.* ¶ 9. This Court held that though the defendant could not have violated the particular careless driving statute, the officer's testimony sufficiently established a "reasonable, articulable suspicion that [the d]efendant was violating traffic laws." *Id.* ¶ 11–12. The inquiry focused on "whether there were facts available to [the officer] that would warrant a person of reasonable caution to believe the stop was appropriate." *Id.* ¶ 10. The defendant in *Brennan* was driving at excessive speed through a parking lot where there were pedestrians and other cars. *Id.* ¶ 2. This Court held that "[t]he observations made by [the officer] would warrant a reasonable officer to believe the stop was appropriate." *Id.* ¶ 11.

{15} *Brennan* and *Muñoz* hold that conduct premised totally on a mistake of law cannot create the reasonable suspicion needed to make a traffic stop; but if the facts articulated by the officer support reasonable suspicion on another basis, the stop can be upheld. *Brennan*, 1998–NMCA–176, ¶¶ 10–12; *Muñoz*, 1998–NMCA–140, ¶ 9.

### 3. Our Case

{16} Now we turn to our case on appeal. We view the facts in the light most favorable to the prevailing party-in this case, Defendant. *See Sanchez*, 2005–NMCA–081, ¶ 5. The officer testified that there was no other traffic in the vicinity. Therefore, the district

court could have concluded that there was no other traffic upon which Defendant's failure to signal could have had an effect, as the statute required. While the arresting officer testified to Defendant's weaving within his lane, the officer also testified that the weaving was not the reason for the stop. At oral argument, the State conceded that weaving could not be used as a basis for the stop.

{17} Failure to signal is not a per se traffic violation, despite this officer's good-faith understanding to the contrary. The arresting officer in our case made a mistake of law, and there are no other facts or testimony to support the violation of another law or to support reasonable suspicion on other grounds. In *Brennan* and *Muñoz*, there were articulable facts that could be applied to an existing law to support an officer's reasonable suspicion that a traffic law had been violated. In the case before us, without more, the officer's testimony cannot "provide reasonable suspicion or probable cause to justify a traffic stop." *Chanthasouxat*, 342 F.3d at 1279.

{18} The State directs our attention to a recent unpublished memorandum opinion from this Court, *State v. Hubble*, No. 26,452, slip op. at 3–4 (N.M.Ct.App. Sept. 10, 2007), which holds contrary to this opinion. "Unpublished decisions are not meant to be used as precedent; they are written solely for the benefit of the parties. Because the parties know the facts of the case, a memorandum opinion may not describe fully the critical facts upon which the case was decided." *Winrock Inn Co. v. Prudential Ins. Co. of Am.*, 1996–NMCA–113, ¶ 27, 122 N.M. 562, 928 P.2d 947 (internal citation omitted). The State recognizes that *Hubble* has no precedential value, but the State suggests that the case is persuasive. While there are factual similarities between *Hubble* and our case, we decline to address *Hubble* because the full facts of that case are not available. *See Romero v. City of Santa Fe*, 2006–NMCA– 055, ¶ 27, 139 N.M. 440, 134 P.3d 131 (declining to address the facts of an unpublished case).

{19} At oral argument, the State contended that there were sufficient facts for the district court to conclude that the officer's vehicle was "other traffic [that] may be affected by" the failure to signal under Section 66–7–325(A). The State made the same argument at the suppression hearing. From the court's decision, it becomes clear that the court was not convinced by this argument. Viewing the evidence presented at the suppression hearing in the light most favorable to Defendant, we agree that the officer's vehicle was not traffic that could be affected by Defendant's failure to signal. The officer testified that there were no other vehicles in the area. Further, he did not state that he had been affected. And the district court commended the officer for his truthfulness. We agree that there could be cases in which the officer's vehicle could be considered affected traffic, depending on the evidence presented. In our case, the facts as articulated by the officer do not support violation of the turn signal law.

{20} It cannot be objectively reasonable to stop a vehicle when there are no facts to support the inference that a law has been violated. To hold otherwise would "remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey." *Lopez– Soto*, 205 F.3d at 1106. In the absence of any facts supporting an actual violation of law, the arresting officer in this case had no objectively reasonable basis to justify stopping Defendant; therefore, the stop was illegal.

### III. CONCLUSION

{21} We agree with the district court's finding that the officer lacked reasonable suspicion to stop Defendant's car. The district court's order suppressing evidence obtained after the invalid stop is affirmed.

{22} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and RODERICK T. KENNEDY, Judge.